6970

WEBSTER v. ATLANTIC COAST LINE RAILROAD CO.

1. EVIDENCE.—DECLARATIONS offered as a part of the *res gestae* were not ruled out absolutely, but Judge held them not admissible at that time, which is matter of discretion with trial Judge.

2. IBID.—OPINION.—A non-expert witness should not be allowed to state whether an impact of a moving engine on a standing car was an ordinary lick, but such question may be answered by an expert, as an engineer or conductor.
   MR. JUSTICE WOODS *thinks the opinion of the non-expert should have been admitted after he had stated all the facts.*

3. IBID.—NOTICE—MASTER AND SERVANT.—Notice to a servant of a cotton mill, engaged in moving machinery from a standing car, of compact of an engine with the car, may be shown by notice of servant of carrier to boss of cotton mill servant.

4. ISSUES.—Proximity of the standing car to a street crossing was not a pertinent inquiry in this case.

5. CONTRIBUTORY NEGLIGENCE—ISSUES.—Where evidence was offered by both sides and received without objection on the issue of contributory negligence, without it having been pleaded, it was not error for trial Judge to submit the issue to jury.

6. MASTER AND SERVANT—FELLOW-SERVANT—ISSUES.—In this case whether the cotton mill boss in control of a servant of the mill was a fellow-servant of such servant in giving him notice, given the boss

by a servant of the carrier, that an engine was about to come in contact with a car in which the mill servant was working, was properly submitted to the jury.

MR. JUSTICE WOODS *thinks the fellow-servant issue inapplicable to the case.*

Before MEMMINGER, J., Marlboro, May, 1907. Affirmed.

Action by Wm. T. Webster against Atlantic Coast Line Railroad Company. From judgment for defendant, plaintiff appeals on following exceptions:

*"Exceptions to Testimony.*

I. "Because his Honor erred in sustaining the objection of defendant's attorney to the question by plaintiff's attorney to the witness John C. Webster, as follows: 'You stated a while ago that you saw Deaver do something and heard him say something. What did he do?' It being submitted that the conversation was a part of the *res gestae.*

II. "Because his Honor refused to allow the plaintiff's witness John C. Webster to answer the question: 'Regarding this pushing of the engine in there, driving it in and the impact on that car, was it an ordinary lick?' The Court held, 'He can describe the effect and condition or anything that happened, but your question elicits a mere matter of opinion. What he calls a hard stroke somebody else would call an easy one. It is a question for the jury.' It being submitted that answer to the said question did not involve an opinion or fact to be known and given by an expert alone, and further, that witness had given facts in relation to the question and upon which his answer, if an opinion, would have been based.

III. "Because his Honor erred in not allowing the witness W. T. Webster to answer the question: 'What I want to know is, whether there was any passageway along there on that side from this district over there, where the mill hands lived, back and forth to the mill.' It being submitted that

plaintiff should have been allowed to show the position of the cars, and their proximity to a crossing, in that the location of the cars would determine the degree of care, in part, in which the train should have been handled; and that cars near a crossing should be handled with greater care than if the train was not near a crossing, and was a circumstance for the consideration of the jury in determining the question of negligent operation.

IV. "Because his Honor erred in allowing defendant's witness E. H. York to testify, over plaintiff's objection, as follows: 'Mr. Deaver was yard boss and had charge of all the men on the outside, and I notified him what cars I had to move, and he showed me what cars I had to move also. Q. What did you tell him? A. Mr. Deaver was yard boss and in charge of all those men, and I told him what cars I had to move and he showed me what cars I had to move; he knew what cars had to come out all the time, and I heard him tell those men myself. Q. What men? A. The men that were in the car. Q. What did you hear him tell them? A. That the engine was coming back down there to get that yarn car.' It being submitted that notice to an employee of an employer not a party to the action is not notice to another employee, especially where the inquiry complained of is to the individual employee and not to the principal; and further, that the testimony was not admissible in response to the charge of wilful negligence, inasmuch as defendant would not be permitted to escape liability for failure to bring home notice to the injured party of danger by giving notice to a third party over whom defendant had no control.

V. "Because his Honor erred in allowing the witness E. H. York to testify, over plaintiff's attorney's objection, and because his Honor erred in overruling the motion of plaintiff to strike out said answer, to wit: 'It was the usual coupling made to couple an automatic coupling. The usual impact to couple automatic couplers together. The car was

not knocked but a little bit; just the usual jar when they run together; no unusual jar at all.' It being submitted that the witness had not qualified as an expert and that the said testimony is objectionable, because it is mere opinion.

VI. "Because his Honor erred, further, in allowing the witness E. H. York to testify, over plaintiff's objection, and answer to the question, 'What do you say as to the movement of those doors, how much force it takes to open them?' The answer being, 'Some car doors move with the motion of the train without any jar at all, and roll back. They are on wheels and the least jar will roll the car door wide open unless it is fastened; others it takes a slight jar.' It being submitted that, in addition to this evidence being irrelevant, the witness having stated that he knew nothing about the car door in question, was not a competent witness to give an opinion as to their condition and otherwise testify as to them.

VII. "Because his Honor erred in allowing the witness J. N. Cox to testify, over the objection of plaintiff's attorney, and to answer the question: 'What do you say as to the force used that day in making that coupling?' The answer to said question being, 'No more than usual with every other coupling.' It being submitted that this testimony is inadmissible on the ground of its being an opinion by an incompetent witness.

VIII. "Because his Honor erred in instructing the witness S. B. Purvis to 'Answer that question just like you want to,' when attorney for plaintiff, on cross-examination, asked witness, 'Would you call it merely a jar, or wasn't it a very severe shock? Didn't it come against it with a great deal of force? You know whether a thing hits hard or easy.' It being submitted that under the direction of the Court plaintiff's attorney was unable to secure an answer responsive to the question asked, and witness was authorized to detail hearsay or other incompetent evidence.

*"Exceptions to Decisions of Law and Assignment of Error
in Law.*

IX. "Because his Honor erred in charging the jury as
follows: 'Now you see as a basis of the action there is negli-
gence affirmed, and in the answer negligence denied. The
plaintiff claims, and bases his claim for damages on the
allegations that the railroad company negligently moved one
of its cars so as to strike against another, and threw him
down and injured him. They allege that they did that, and
that it was negligence for them to do that; that it was done
wantonly, wilfully or recklessly. The railroad company
denies that positively and sets up a defense, which I will
hereafter explain to you, of contributory negligence;' the
error being the statement that the railroad company sets up
the defense of contributory negligence.

X. "Because his Honor erred in charging the jury: 'Now,
if you find in this case that there were both of those elements
of negligence, wanton, wilful or reckless negligence, then
you do not have to consider at all the defense set up in the
answer of what is known as contributory negligence;
because, as against wilful, wanton or reckless negligence,
contributory negligence is no defense.'

XI. "Because his Honor erred in charging the jury as
follows: "Contributory negligence means that where the
person himself who seeks to recover damages for the negli-
gence of another is himself negligent, and his negligence in
some degree contributes to the injury.' It being submitted
that this definition of contributory negligence is erroneous,
because to establish the defense of contributory negligence
it is not sufficient to show, in order to recover damages for
the negligence of another, that the injured party is also
negligent, and that his negligence, in some degree, con-
tributed to the injury; but it is necessary to show that the
plaintiff has contributed to the accident to the extent of fur-
nishing the proximate cause thereof, and plaintiff's negli-
gence must contribute to such extent so that but for his

concurrent and cooperative fault the injury would not have happened to him: it being submitted that the plaintiff's 'negligence' might 'in some degree have contributed to the injury' and yet the defense of contributory negligence not be established, and it being error to charge the law of contributory negligence when it was not pleaded.

XII. "It being further submitted that his Honor erred in charging the jury: 'Because the law says where both parties are negligent, both in the wrong, both at fault, and the negligence of both contributes, combines and concurs to bring about the injury, the law will not attempt to come in there and divide up the degree of negligence between them. It simply says that the person who himself was negligent cannot recover damages for the negligence of the other person.' The error herein being that his Honor failed to set forth the true principles of the law on contributory negligence, and that he should have charged the jury that to establish the defense of contributory negligence it was incumbent upon the defendant to show not only that the negligence of plaintiff contributed, combined and concurred to bring about the injury, and that he could not recover damages for his own negligence, but that the plaintiff's negligence was the proximate cause of plaintiff's injury, and without the plaintiff's negligence there would have been no accident or injury.

XIII. "Because his Honor erred in charging the jury: 'Now, if you decide for mere negligence, against which contributory negligence is a good defense, of course you will decide merely for the defendant in the case.' It being submitted that, under the pleadings, it was error to charge contributory negligence is a good defense, and it was also a charge on the facts.

XIV. "Because his Honor erred in charging plaintiff's first request to charge, to wit: 'That the charge made against the defendant by the plaintiff is that it negligently and wilfully ran the engine against the car in which plaintiff worked, with great force and violence, causing the box of

iron to fall on plaintiff and injure him; and if they find that
the plaintiff has proved, by the preponderance of the evi-
dence, that such charge is true, and that it was done negli-
gently, they should find for the plaintiff such damages as
he actually sustained from the injury;' and he says, 'I will
add, unless you find there was contributory negligence, in
which event you find nothing for the plaintiff, unless you
find wilful, wanton or reckless negligence;' the error being,
that the plea of contributory negligence having not been
made, it was error to charge that 'Unless you find there
was contributory negligence, in which event you will find
nothing for the plaintiff.'

XV. "Because his Honor erred in refusing to charge
plaintiff's second additional request to charge, to wit: 'That
contributory negligence is not pleaded and cannot be relied
on in this case,' when he should have so charged with the
pleadings.

XVI. "Because his Honor erred in charging the jury,
when refusing defendant's second additional request to
charge: 'I will not charge you that, because if contributory
negligence is pleaded in the answer you have it for your
consideration.' It being submitted that his Honor thereby
gave to the jury the right and duty to decide whether con-
tributory negligence was pleaded, whereas that question was
for the Court alone to decide.

XVII. "Because his Honor erred in charging defendant's
seventh request to charge, to wit: 'That if the jury believe,
from the testimony, that notice of the backing of the train
for the purpose of removing or coupling up the car in which
the plaintiff was, or had been working, was given to him,
or that he actually saw the train backing for that purpose,
and he did not exercise ordinary diligence or care to avoid
injury, then he cannot recover.' The error being, first, con-
tributory negligence was not pleaded; second, even if con-
tributory negligence had been pleaded the said request
should have been refused, in that it fails to charge that the

lack of care on the part of plaintiff must have been the direct and proximate cause of the injury.

XVIII. "Because his Honor erred in charging defendant's seventh and a half request to charge, to wit: 'That if the jury believe that notice was given of the backing of the train to couple on the car in which plaintiff was working, but that Deaver, the fellow-servant, if he was such fellow-servant, of the plaintiff, failed to give or extend such notice to the plaintiff, and it was due to this negligence of a fellow-servant that the plaintiff received the alleged injuries, as the primary cause, then he cannot recover for this negligence of such fellow-servant.' First. That his Honor erred, in that he submitted to the jury the question of whether Deaver was the fellow-servant of the plaintiff. Second. That he should have charged that the law of fellow-servant was not applicable in this case, as it is not an action by a servant against a common master. Third. That, if Deaver was the agent to communicate the notice, the defendant was responsible for his negligence. Fourth. If Deaver was not the agent of the defendant, then his failure to do so, in so far as plaintiff is concerned, could not have been the proximate cause of the injury, and it was error to so charge and needlessly confusing to the jury.

XIX. "Because his Honor erred in charging the defendant's ninth request to charge, to wit: 'That the negligence of the defendant, as a proximate cause of the alleged injuries, is the basis of the plaintiff's claim; hence, if the jury believe that if the plaintiff did not exercise due care and caution and was guilty of negligence, even of the slightest degree, and that his negligence, combining with that of the defendant, was the proximate cause of his alleged injuries, then verdict must be for the defendant.' It being submitted: First. This is intended as a charge on contributory negligence, which is not pleaded by the defendant. Second. That it was error to charge that negligence of the slightest degree on the part of the plaintiff, combined with that of the defendant and forming the proximate cause of the injury,

would be a bar to recovery, when the defendant would be required to show that the negligence on the part of the plaintiff. was the proximate cause, and not the combined negligence of the plaintiff and the defendant the proximate cause.

XX. "Because his Honor erred in charging defendant's tenth request to charge, to wit: 'That if the jury believe that the defendant was guilty of negligence in using unnecessary force in making the coupling, yet if they are satisfied that the box of machinery was left in such a position by the removal of other boxes, or by an interference with it on the part of the plaintiff and his fellow mill operatives, or either of them, so as to render said box of machinery unsafe or liable to fall upon said car being struck, and that that was the proximate cause of plaintiff's alleged injury, then they must find for the defendant.' It being submitted that under the conditions set forth in this request his Honor should have charged that the defendant would be held to a greater degree of care on account of the more dangerous position plaintiff would be in by the removal of the boxes. Second. Because his Honor charges, in effect, that the defendant would be relieved of all liability for injury to the plaintiff when the injury was caused on that car from the negligence of a fellow mill operative, when he should have charged that the defendant, if the defendant had allowed another mill operative to enter upon its premises and place the boxes in a more hazardous position, then the defendant must be held to a greater degree of care as to the plaintiff. Third. The Court erred in charging that the law of fellow-servant applied in this case, there being no question here between master and servant.

XXI. "Because his Honor erred in charging the jury in conclusion: 'I do not think that I have mentioned that the burden of proving the defense of contributory negligence is on the defendant, to prove it by the greater weight of the testimony; while, of course, as I have already charged you, the general burden of proving the case as alleged in the complaint is upon the plaintiff who comes into Court to establish

it by the greater weight of the testimony.' The error being that his Honor places before the jury the defense of contributory negligence."

*Messrs. Newton & Owens, Stevenson, Matheson & Stevenson,* for appellant, cite: *Opinions should not be received where facts may be produced: Easter* v. *Ry.,* 59 S. C.; 7 Ency., 493. *At crossing more care is required of carrier:* 58 S. C., 70; 52 S. C., 323. *Notice to Deaver is not notice to plaintiff:* 71 Mo., 303. *Law of contributory negligence should not have been given jury in absence of plea: Scott* v. *Ry.,* 67 S. C.; 75 S. C., 211, 475; 76 S. C., 533. *Contributory negligence was not properly defined:* 56 S. C., 95. *The fellow-servant law is not applicable here:* 12 Ency., 897, 990, 992; 71 S. C., 56; 77 S. C., 337; 71 Mo., 303; 45 N. E., 563; 22 Ont. App. R., 292.

*Messrs. Livingston & Muller* and *Townsend & Rogers,* contra. *Messrs. Livingston* and *Muller* cite: *All a non-expert witness can do is to state the facts:* 12 Ency., 424; 17 Cyc., 25; 77 S. C., 404. *The Judge properly defined contributory negligence:* 7 Ency., 371; 56 S. C., 95; 58 S. C., 228; 59 S. C., 311. *A hypothetical statement is not a charge on the facts:* 47 S. C., 505; 76 S. C., 49, 91. *Appellant's objections to issue of contributory negligence came too late:* 70 S. C., 47; 73 S. C., 504; 76 S. C., 550; 63 S. C., 370; 67 S. C., 145; 51 S. C., 412; 55 S. C., 90; 68 S. C., 409; 65 S. C., 308.

July 23, 1908. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The action of William T. Webster against the Atlantic Coast Line Railroad Company by his complaint represented: That on the 11th day of September, 1902, the defendant had placed upon its side-track a car laden with heavy machinery intended for the McColl Manufacturing Company, and such company had

placed three of its employees in said car to prepare said irons for delivery to the said McColl Manufacturing Company. Those employees had been engaged about a week and had removed all of said heavy machinery except three boxes of the same.

On the afternoon of the said 11th day of September, 1902, the defendant, through its agents, had caused an engine with several of its cars attached thereto, as alleged by plaintiff, to be driven against said car, knowingly, wilfully, recklessly and maliciously, and with violence, thereby causing one of the heavy boxes, said to contain between twelve hundred and two thousand pounds, to turn from its position and fall upon plaintiff, thereby inflicting upon him injuries about his hip and crushing him down against the side and upon the floor of said car, with such violence that his life was in imminent peril, and his back and hips and limbs were greatly bruised and crushed, causing him intense pain, so that he was unable for many weeks to work, and that he still suffers at the time of the filing of this complaint, and believes he will never recover from the injuries received, and which were the direct consequences of the unlawful, wilful, negligent, reckless and malicious act of the defendant, its servants and agents. The plaintiff alleges that the defendant, its agents and servants, were guilty of gross negligence and a wilful and malicious intent, through a spirit of recklessness and deviltry, to injure, harm, wound and cripple the plaintiff, while it owed to the plaintiff the duty and obligations to use reasonable care and ordinary diligence in the moving and manipulation of its engine and cars, to his damage five thousand dollars.

The answer of the defendant is as follows:

1. "That it denies each and every allegation of said complaint not hereinafter specifically admitted or explained.

2. "That it has no knowledge or information sufficient to form a belief as to the first and second allegations of said complaint, and therefore demands strict proof of same.

3. "That it denies so much of the third allegation of said

complaint as alleges that it is a corporation chartered under the laws of the State of South Carolina.

4. "That it admits that on or about the time stated in said complaint it hauled certain machinery for the McColl Manufacturing Company, at McColl, S. C., and placed said car, containing said machinery, on a sidetrack, but it specifically denies each and every other allegation contained therein.

"For a second defense:

1. "That the alleged injury was not caused by the fault or negligence of the defendant, its agents, servants or employees, but was caused by the fault, negligence and carelessness of the plaintiff himself."

The case was heard by Judge Memminger and a jury. After the hearing of much testimony for both sides and the charge of his Honor, the jury returned a verdict for the defendant. After judgment, the plaintiff has appealed upon twenty-one grounds.

Now let those exceptions be reported.

We will consider those exceptions: 1. As to admissibility of testimony. 2. As to errors in the charge.

As to admissibility of testimony:

When John C. Webster was asked the question: "You stated awhile ago that you saw Deaver do something and heard him say something; what did he do?" By reference to the case it is ascertained, the objection was as to what Deaver said, not as to what he did; the pertinency as to what he said was left open by the Circuit Judge, for he stated that the objection would be sustained at this stage of the case. The orderly administration of justice must always be left to the wise discretion of the trial Judge, and this ruling especially applies to the administration as to admissibility of testimony, especially as to the time when the same may be admissible. We see no objection to this ruling, and we overrule the exception. It afterwards appeared that this witness was allowed to testify fully.

We will consider exceptions two, five, seven and eight jointly. John C. Webster was not allowed to answer the

question: "Regarding this pushing of engine in there, driving it in and the impact of that car, was it an ordinary lick?" The witness was properly refused permission to answer; the witness had no experience, and therefore his answer to this question was properly forbidden, while Coxe and York, men of experience, as engineer and conductor, were allowed to answer such questions, and the witness Purvis was to answer as he saw proper the question as to whether the impact was soft or hard— whether he would call it a severe jar or merely a shock—it was merely the fact that he was required to testify to. These exceptions are overruled.

Fourth. It seems that Mr. Deaver was an employee of the Marlboro Cotton Mills, while Mr. York was an employee of the railroad company; the railroad company had no authority over Mr. Deaver, but he was foreman of the yards, and York told him that he was going to move the car on the spur-track, and he called out to the men in the car to look out, the train was going to shift out that car of yarn, and look out for the oil bucket, as he expected it to be turned over. Mr. York spoke to him while in the employment of the railroad company; the conduct of these two men was legitimate when conveyed one to the other; and when Mr. Deaver conveyed it to the men in the car, it was legitimate for them to answer the questions asked them, respectively; and while Mr. Deaver was not an employee of the railroad company, still, as agent of the Marlboro Cotton Mills, he had received instructions from the railroad as to the movement of cars in which the Marlboro Mills were interested. This exception is overruled.

Third. So far as the third exception is concerned, the Circuit Judge properly overruled all efforts of the plaintiff to show the exact position of the car when struck. It had no proper reference to any matter set up in the pleadings, and any testimony as to it was properly ruled out as not bearing directly or collaterally upon the question at issue, but being irrelevant. These matters are

properly left in the wise discretion of the Circuit Judge. This exception is overruled.

Sixth. The sixth exception was made because York was allowed to testify as to how the doors of cars are operated; he spoke as an expert, and there was no exception to his testimony. This exception must be overruled.

As to error in the charge:

The ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, nineteenth, twentieth and twenty-first exceptions will be considered together.

These exceptions relate to the error of the Circuit Judge in charging the law of contributory negligence when it was not pleaded. This Court held, in *Cooper* v. *Ry. Co.*, 56 S. C., 91, 34 S. E., 16, that "Contributory negligence is the want of ordinary care on the part of the person injured by the actionable negligence of another, combining and concurring with that negligence and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred." In *Martin* v. *Ry. Co.*, 51 S. C., 159, 28 S. E., 303, it was held that "Contributory negligence is a defense that must be set up in the answer," following the decision of this Court on that point in the case of *Wilson* v. *Ry. Co.*, 51 S. C., 79, 28 S. E., 91. But while that is true, and is upheld by this Court at this time as a correct enunciation of the law, still, in the case of *Wingo* v. *Inman Mills*, 76 S. C., 550, 57 S. E., 525, it is held that "where plaintiff had notice of the pleas of contributory negligence and assumpton of risks, and both sides introduced evidence on a defective plea of the issues, without objection, a new trial will not be granted on the mere technicality of defective plea, unless it is shown to have impaired substantial rights."

In the case at bar the plaintiff and defendant, without objection, offered testimony as to the plea of contributory negligence; the Judge acted upon the assumption that the plea of contributory negligence was pleaded; no attention

was called thereto until the last argument was being made; the defendant had offered to substantiate the plea of contributory negligence in his answer; the Circuit Judge declined to make any amendments on the ground that he conceived that the plea had been already made. In his charge to the jury he had instructed the jury on this plea. Under these circumstances we feel constrained to hold that his conduct should be upheld by us. We, therefore, overrule all the exceptions relating to this matter.

Eighteenth. The rule as stated in 12 Enc. of Law, 897, is as follows: "This rule which, with its statutory modifications, it is the purpose of this article to discuss, may be stated as follows: 'Where a master uses due diligence in the selection of competent and trusty servants, and furnishes them with suitable means to perform the service in which he employs them, he is not answerable, where there is no countervailing statute, to one of them for an injury received by him in consequence of the carelessness of another, where both are engaged in the same service.' *   * To make out the case for the application of the fellow-servant rule the injured person must, of course, have been a servant of the defendant. * * * It is a self-evident proposition that persons are not fellow-servants within the rule exempting a master for liability to one servant for the negligence of another, unless they are in the employ, or at least under the control, of the same master."

The Judge submitted the question to the jury as a matter of fact whether or not the plaintiff and Deaver were fellow-servants. Can the contention be sustained? The idea of the request, as well as the intention of the Court, was that if the jury found from the testimony that there were facts sufficient, then they could say, as a matter of fact, that they were fellow-servants; the jury were not to find as a matter of law who were fellow-servants. The Judge in his charge held that Deaver, the fellow-servant, if he was such fellow-servant of the plaintiff, failed to give or extend such notice to the plaintiff, and it was due to this negligence of a fellow-

servant that the plaintiff received the alleged injuries as a primary cause, then he cannot recover for the negligence of such fellow-servant.    We overrule this exception.

It follows, therefore, that the judgment of this Court is that the judgment of the Circuit Court be affirmed.

MR. JUSTICE WOODS, *dissenting.*    The witness, John C. Webster, had stated all the facts connected with the impact of the cars, and, therefore, it seems to me it was competent for him to testify whether the impact was an ordinary one or of unusual violence.    But as all the facts were laid before the jury by the witnesses with great particularity, the inference drawn by them as to the force of the impact of the cars would be as safe as if the witness had testified to his opinion, and, therefore, the exclusion of the question was harmless.

The following instruction seems to me to be unsound as a proposition of law applicable to this case: "That if the jury believe that notice was given of the backing of the train to couple on the car in which the plaintiff was working, but that Deaver, the fellow-servant, if he was such fellow-servant, of the plaintiff, failed to give or extend such notice to the plaintiff, and it was due to this negligence of a fellow-servant that the plaintiff received the alleged injuries, as the primary cause, then he cannot recover for this negligence of such fellow-servant.    Of course, gentlemen of the jury, the defendant railroad company is charged as being the author of the plaintiff's injury—that is, that it was through the negligence of the railroad company that the man was injured.    So, of course, it follows that if he was not injured by the negligence of the railroad company, as a proximate cause of his injury, but was injured by the negligence of some fellow-servant of his, a person with whom he was working, as well as by his own negligence, if that was a proximate cause of his injury, of course, he could not recover, and that is what the proposition means."

The plaintiff was not a servant of the defendant, but, as a licensee of defendant's car, was unloading machinery for

the Marlboro Cotton Mills, and was, therefore, a servant of the latter corporation. If Deaver, as an employee of the Marlboro Cotton Mills, was a fellow-servant of the plaintiff, I am unable to assent to the proposition that the defendant could shift to Deaver any duty it may have owed to the plaintiff to notify him to look out for the shock of the coupling of the cars. A servant assumes the risk of the due performance by his fellow-servant of the ordinary duties imposed by the common master on such fellow-servant, but clearly not of the due discharge of duties imposed or tasks assigned by another person with whom the injured servant had no contractual relation.

The question whether Deaver was a fellow-servant of the plaintiff in the common employment of the Marlboro Cotton Mills was left to the jury. Assuming he bore that relation to the plaintiff, the defendant's notice to him could not operate to discharge any duty it owed to the plaintiff. It seems to me that there should be a new trial for error of the Circuit Judge in charging to the contrary.

Whether such notice to Deaver would be sufficient to acquit the defendant of liability and shift the responsibility for any actionable negligence of Deaver to the Marlboro Cotton Mills, if Deaver was not a fellow-servant, but the representative of the cotton mills in the duty of assigning plaintiff a safe place to work, is an interesting question not made on the trial, and, therefore, not before the Court for decision.